```
FILED
CLERK, U.S. DISTRICT COURT
11/15/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>IVAN KOVALEV,<br>  aka "Thomas Pias,"<br>  aka "Vladimir Chekin,"<br>  aka "Susan Smith,"<br><br>    Defendant. | No. 2:23-cr-00560-SB<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud and Bank Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 2(a), (b): Aiding and Abetting; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS AND DEFINITIONS

At all times relevant to this Indictment:

1.  Defendant IVAN KOVALEV, also known as ("aka") "Thomas Pias," aka "Vladimir Chekin," aka "Susan Smith," was a resident of Russia.

2.  AT&T Corporation ("AT&T") was a telecommunications company headquartered in Dallas, Texas, with retail stores across the United States, including in Portland, Oregon, and Lancaster, California, within the Central District of California.

3. A Subscriber Identity Module ("SIM") card was a chip located inside a cell phone that stored information identifying and authenticating a cell phone subscriber. When a cell phone carrier reassigned a phone number from one physical phone to another -- such as when a customer purchased a new phone but wanted to retain the same number -- the carrier switched the assignment of the cell phone number from the SIM card in the old phone to the SIM card in the new phone, a process sometimes called "porting" a number.

4. "SIM swapping" was the process of fraudulently inducing a cell phone carrier to reassign a cell phone number from the legitimate subscriber or user's SIM card to a SIM card controlled by another without the legitimate subscriber's or user's authorization.

5. An "overlay" was an electronic template containing a victim's personal identifying information, which could be printed to create a fraudulent driver's license.

COUNT ONE

[18 U.S.C. § 1349]

The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 5 of the Introductory Allegations and Definitions of this Indictment as though fully set forth herein.

A.  OBJECTS OF THE CONSPIRACY

Beginning on an unknown date, but no later than on or about May 16, 2018, and continuing through at least November 14, 2019, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, defendant IVAN KOVALEV, also known as ("aka") "Thomas Pias," aka "Vladimir Chekin," aka "Susan Smith" ("KOVALEV"), together with Coconspirator 1, Coconspirator 2, Coconspirator 3, and others known and unknown to the Grand Jury, knowingly conspired and agreed with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Sections 1344(1) and 1344(2).

B.  THE MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.  Defendant KOVALEV would identify potential victims who had bank accounts that could be accessed online.

2.  Defendant KOVALEV would obtain personal identifying information and cell phone numbers for potential victims.

3.  Defendant KOVALEV would send a victim's personal identifying information and cell phone number to Coconspirator 1, an employee of AT&T who worked at an AT&T retail store in Portland, Oregon, and other coconspirators, including Coconspirator 2 and

Coconspirator 3.

4. In some instances, defendant KOVALEV would send to other coconspirators a victim's personal identifying information on an overlay attached to an email, which a coconspirator would use to create a fraudulent driver's license in the victim's name.

5. In other instances, defendant KOVALEV would send a victim's personal identifying information, including name, date of birth, and social security number, directly in the body of an email, text message, or instant message.

6. At defendant KOVALEV's instruction, Coconspirator 1 and other coconspirators, including Coconspirator 3, would use a victim's personal identifying information to fraudulently cause AT&T to swap the victim's SIM card from the victim's cell phone to a cell phone controlled by defendant, Coconspirator 1, Coconspirator 2, Coconspirator 3, or other coconspirators.

7. Defendant KOVALEV would cause password reset information and two-factor authentication codes for a victim's online bank account to be sent via text message to a phone controlled by Coconspirator 1, Coconspirator 2, Coconspirator 3, or other coconspirators, instead of the victim's cell phone.

8. Coconspirator 1, Coconspirator 2, Coconspirator 3, and other coconspirators would forward the password reset information or authentication codes for a victim's cell phone to defendant KOVALEV.

9. Defendant KOVALEV would then access a victim's online bank account and make fraudulent wire transfers from the victim's bank account.

10. Defendant KOVALEV would send digital payment to Coconspirator 1, or other coconspirators.

4

C.   OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendant KOVALEV, together with Coconspirator 1, Coconspirator 2, Coconspirator 3, and others known and unknown to the Grand Jury, committed and caused to be committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On or before April 13, 2018, defendant KOVALEV obtained the cell phone number and personal identifying information, including name, date of birth, and address, of victim S.Y., a resident of Texas.

Overt Act No. 2:   On April 25, 2018, defendant KOVALEV sent victim S.Y.'s personal identifying information to Coconspirator 3.

Overt Act No. 3:   On May 16, 2018, while he was working at an AT&T retail store in Portland, Oregon, Coconspirator 1 swapped victim S.Y.'s SIM card from victim S.Y.'s cell phone to an Alcatel cell phone controlled by Coconspirator 1, or another coconspirator.

Overt Act No. 4:   On May 16, 2018, after Coconspirator 1 had swapped victim S.Y.'s SIM card, Coconspirator 1 or another coconspirator instituted call forwarding on victim S.Y.'s cell phone.

Overt Act No. 5:   On May 16, 2018, Coconspirator 2 called victim S.Y.'s cell phone two times.

Overt Act No. 6:   On May 16, 2018, defendant KOVALEV gained access to victim S.Y.'s online bank account and initiated a wire transfer in the amount of $247,652.74 to a Portuguese bank account (the "Portuguese Bank Account").

Overt Act No. 7:   On or before November 6, 2018, defendant

KOVALEV obtained the cell phone number and personal identifying information, including name, date of birth, and social security number, of victim S.A., a resident of the Central District of California.

Overt Act No. 8: On or before November 6, 2018, defendant KOVALEV sent victim S.A.'s cell phone number and personal identifying information to Coconspirator 1, Coconspirator 3, and other coconspirators.

Overt Act No. 9: On November 6, 2018, after receiving victim S.A.'s information from defendant KOVALEV, Coconspirator 3 went to an AT&T retail store in Lancaster, California, posing as victim S.A. and caused AT&T to swap victim S.A.'s SIM card from victim S.A.'s cell phone to a cell phone controlled by Coconspirator 3.

Overt Act No. 10: On November 6, 2018, after victim S.A.'s SIM card was swapped, defendant KOVALEV changed the password, recovery email, and recovery telephone number on two of victim S.A.'s email accounts.

Overt Act No. 11: On November 6, 2018, defendant KOVALEV gained access to victim S.A.'s online bank account and initiated a wire transfer in the amount of $246,782.70.

Overt Act No. 12: On November 6, 2018, defendant KOVALEV paid Coconspirator 1 $1,150 for swapping victim S.A.'s SIM card.

Overt Act No. 13: On or before December 6, 2018, defendant KOVALEV obtained the cell phone number and personal identifying information, including name, date of birth, and social security number, of victim S.Q.T., a resident of the Central District of California.

Overt Act No. 14: On December 6, 2018, defendant KOVALEV sent

Coconspirator 1 and another coconspirator victim S.Q.T.'s cell phone number and personal identifying information.

<u>Overt Act No. 15</u>:  On December 6, 2018, while he was working at an AT&T retail store in Portland, Oregon, Coconspirator 1 swapped victim S.Q.T.'s SIM card from victim S.Q.T.'s cell phone to an Alcatel cell phone controlled by Coconspirator 1.

<u>Overt Act No. 16</u>:  On December 6, 2018, after Coconspirator 1 had swapped victim S.Q.T.'s SIM card, defendant KOVALEV instructed Coconspirator 1 and another coconspirator to text the "message code" to a Google Voice number.

<u>Overt Act No. 17</u>:  On December 6, 2018, defendant KOVALEV gained access to victim S.Q.T.'s online bank account and initiated a wire in the amount of $99,528.33 to the Portuguese Bank Account.

<u>Overt Act No. 18</u>:  On December 6, 2018, after defendant KOVALEV initiated the wire transfer from victim S.Q.T.'s online bank account, defendant KOVALEV changed the registration email address on victim S.Q.T.'s online bank account to an email account controlled by defendant KOVALEV.

<u>Overt Act No. 19</u>:  On December 6, 2018, defendant KOVALEV paid Coconspirator 1 $2,000 for swapping victim S.Q.T.'s SIM card.

<u>Overt Act No. 20</u>:  On November 14, 2019, at his residence in Portland, Oregon, Coconspirator 1 possessed personal identifying information belonging to numerous victims, including the cell phone number, name, and social security number of victims S.A. and S.Q.T. that defendant KOVALEV had sent him.

## COUNT TWO

[18 U.S.C. § 1028A(a)(1); 2(a), (b)]

Beginning on an unknown date, but no later than on or about November 6, 2018, and continuing through at least November 14, 2019, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, defendant IVAN KOVALEV, also known as ("aka") "Thomas Pias," aka "Vladimir Chekin," aka "Susan Smith" ("KOVALEV"), and Coconspirator 1, each aiding and abetting the other, knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, means of identification that defendant KOVALEV and Coconspirator 1 knew belonged to other persons, during and in relation to the offense of conspiracy to commit wire fraud and bank fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

COUNT THREE

[18 U.S.C. § 1349]

The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 5 of the Introductory Allegations and Definitions of this Indictment as though fully set forth herein.

A.   OBJECTS OF THE CONSPIRACY

Beginning on an unknown date, but no later than on or about March 20, 2018, and continuing through at least November 19, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant IVAN KOVALEV, also known as ("aka") "Thomas Pias," aka "Vladimir Chekin," aka "Susan Smith" ("KOVALEV"), together with Coconspirator 4, and others known and unknown to the Grand Jury, knowingly conspired and agreed with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Sections 1344(1) and 1344(2).

B.   THE MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.   Defendant KOVALEV would identify potential victims who had bank accounts that could be accessed online and would obtain personal identifying information and cell phone numbers for potential victims.

2.

3.   Defendant KOVALEV would send a victim's personal identifying information and cell phone number to Coconspirator 4.

4.   Defendant KOVALEV would send Coconspirator 4 a victim's personal identifying information on an overlay attached to an email.

9

5. At defendant KOVALEV's instruction, Coconspirator 4 would then print the overlay to create a fraudulent driver's license in the victim's name.

6. Coconspirator 4 would use the fraudulent driver's license to cause AT&T or another phone carrier to swap a victim's SIM card from the victim's cell phone to a cell phone controlled by Coconspirator 4 or other coconspirators.

7. Defendant KOVALEV would then cause password reset information and two-factor authentication codes for a victim's online bank account to be sent via text message to a phone controlled by Coconspirator 4 or other coconspirators, instead of the victim's cell phone.

8. Coconspirator 4 would forward the password reset information or authentication codes for a victim's cell phone to defendant KOVALEV.

9. Defendant KOVALEV would access a victim's online bank account and make fraudulent wire transfers from the victim's bank account.

10. Defendant KOVALEV would send digital payment to Coconspirator 4.

C. <u>OVERT ACTS</u>

On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendant KOVALEV and Coconspirator 4, together with others known and unknown to the Grand Jury, committed and caused to be committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

<u>Overt Act No. 1:</u>   On March 20, 2018, Coconspirator 4 emailed

defendant KOVALEV regarding creating a fraudulent identification using Coconspirator 4's image.

<u>Overt Act No. 2</u>:   On April 4, 2018, defendant KOVALEV emailed Coconspirator 4 driver's license overlays containing personal identifying information, including the names and dates of birth, of ten victims.

<u>Overt Act No. 3</u>:   On April 13, 2018, defendant KOVALEV emailed Coconspirator 4 driver's license overlays containing personal identifying information, including the names and dates of birth, of twelve victims, including victim S.Y., a resident of Texas.

<u>Overt Act No. 4</u>:   On April 23, 2018, defendant KOVALEV emailed Coconspirator 4 driver's license overlays containing personal identifying information, including the names and dates of birth, of four victims.

<u>Overt Act No. 5</u>:   On May 14, 2018, defendant KOVALEV emailed Coconspirator 4 driver's license overlays containing personal identifying information, including the names and dates of birth, of eight victims.

<u>Overt Act No. 6</u>:   On May 30, 2018, defendant KOVALEV emailed Coconspirator 4 driver's license overlays containing personal identifying information, including the names and dates of birth, of eight victims, including victim E.K., a resident of Georgia.

<u>Overt Act No. 7</u>:   On June 18, 2018, defendant KOVALEV emailed Coconspirator 4 driver's license overlays containing personal identifying information, including the names and dates of birth, of four victims.

<u>Overt Act No. 8</u>:   On June 22, 2018, defendant KOVALEV emailed Coconspirator 4 driver's license overlays containing personal

identifying information, including the names and dates of birth, of eight victims.

<u>Overt Act No. 9</u>:   On August 15, 2018, Coconspirator 4 emailed defendant KOVALEV three photographs depicting Coconspirator 4 so that defendant KOVALEV could create a fraudulent identification document bearing Coconspirator 4's image.

<u>Overt Act No. 10</u>:   On November 19, 2020, in his apartment in West Hollywood, California, Coconspirator 4 possessed personal identifying information belonging to more than forty victims.

COUNT FOUR

[18 U.S.C. § 1028A(a)(1); 2(a), (b)]

Beginning on an unknown date, but no later than on or about March 20, 2018, and continuing through at least November 19, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant IVAN KOVALEV, also known as ("aka") "Thomas Pias," aka "Vladimir Chekin," aka "Susan Smith" ("KOVALEV"), and Coconspirator 4, each aiding and abetting the other, knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, means of identification that defendant KOVALEV and Coconspirator 4 knew belonged to other persons during and in relation to the offense of conspiracy to commit wire fraud and bank fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count Three of this Indictment.

COUNT FIVE

[18 U.S.C. § 1349]

The Grand Jury re-alleges and incorporates by referencee paragraphs 1 through 5 of the Introductory Allegations and Definitions of this Indictment as though fully set forth herein.

A. OBJECTS OF THE CONSPIRACY

Beginning on an unknown date, but no later than on or about December 18, 2018, and continuing through at least January 6, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant IVAN KOVALEV, also known as ("aka") "Thomas Pias," aka "Vladimir Chekin," aka "Susan Smith" ("KOVALEV"), together with Coconspirator 3, Coconspirator 5, Coconspirator 6, Coconspirator 7, and others known and unknown to the Grand Jury, knowingly conspired and agreed with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Sections 1344(1) and 1344(2).

B. THE MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were to be accomplished, in substance, as follows:

1. Defendant KOVALEV would identify potential victims who had bank accounts that could be accessed online.

2. In some instances, defendant KOVALEV would obtain personal identifying information for a victim and create fraudulent identification documents using the victim's information.

3. Defendant KOVALEV would send Coconspirator 5 the fraudulent identification documents and a printer so that Coconspirator 5 could print the documents.

14

4. Defendant KOVALEV would make travel reservations so that Coconspirator 5 could travel to a bank branch to initiate fraudulent wire transfers from a victim's bank account, using the fraudulent identification documents.

5. Defendant KOVALEV would send Coconspirator 5 instructions regarding how to initiate a fraudulent wire transfer from a victim's bank account.

6. Coconspirator 5 would then travel to the designated bank branch to attempt the wire transfer from a victim's bank account.

7. In some instances, defendant KOVALEV would gain access to a victim's online bank account and add credit cards in fictitious names linked to the victim's account.

8. Defendant KOVALEV would send those credit cards to Coconspirator 3, Coconspirator 6, and Coconspirator 7, and instruct them to make purchases using the cards.

9. Coconspirator 3, Coconspirator 6, and Coconspirator 7 would use the credit cards to make purchases at retail stores across the United States.

C. OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendant KOVALEV, together with Coconspirator 3, Coconspirator 5, Coconspirator 6, Coconspirator 7, and others known and unknown to the Grand Jury, committed and caused to be committed various overt acts withinin the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On or before December 17, 2018, defendant KOVALEV or a coconspirator obtained personal identifying information,

including name, date of birth, and social security number, of victim J.B., the CEO of Victim Business A.H., along with Bank of America account information for Victim Business A.H., a healthcare company located in Massachusetts.

Overt Act No. 2:  On or before December 17, 2018, defendant KOVALEV sent Coconspirator 5 the following: three driver's licenses containing victim J.B.'s name and date of birth and bearing Coconspirator 5's photograph; one social security card containing victim J.B.'s name and social security number; three debit cards containing victim J.B.'s name; Bank of America account information for Victim Business A.H.; a wire transfer authorization form containing instructions to wire $1,250,000 from Victim Business A.H.'s account to a Turkish bank account (the "Turkish Bank Account"); a printer; a business class train ticket from Washington D.C. to Hartford, Connecticut; and reservation information for a hotel in Hartford, Connecticut.

Overt Act No. 3:  On December 17, 2018, at defendant KOVALEV's instruction, Coconspirator 5 traveled from Washington D.C. to Hartford, Connecticut, using the train ticket defendant KOVALEV had sent him.

Overt Act No. 4:  On December 18, 2018, at defendant KOVALEV's instruction, Coconspirator 5 went to a Bank of America branch in Hartford, Connecticut, presented the fraudulent identification documents in victim J.B.'s name, and posed as victim J.B. to attempt a $1.25 million wire transfer from Victim Business A.H.'s account to the Turkish Bank Account.

Overt Act No. 5:  On or before December 21, 2018, defendant KOVALEV gained access to the online bank account for Victim Business

S.C., a school board located in Florida, and added five unauthorized credit cards to Victim Business S.C.'s account.

<u>Overt Act No. 6</u>:   On or after December 21, 2018, defendant KOVALEV or a coconspirator caused Victim Business S.C.'s bank to send the following: one unauthorized credit card in the fictitious name of "Dustin Fugate" to Coconspirator 3 in Lancaster, California; one unauthorized credit card in the fictitious name of "Jason Bands" to Coconspirator 6 in South Carolina; and one unauthorized credit card in the fictitious name of "David Greer" to Coconspirator 7 in Michigan.

<u>Overt Act No. 7</u>:   Between January 2, 2019, and January 6, 2019, at defendant KOVALEV's direction, Coconspirator 3 posed as "Dustin Fugate" and used the unauthorized credit card to make purchases totaling $58,596.54 at various retail stores, including Apple stores in Northridge, Canoga Park, and Valencia, California.

<u>Overt Act No. 8</u>:   Between January 2, 2019, and January 3, 2019, at defendant KOVALEV's direction, Coconspirator 6 posed as "Jason Bands" and used the unauthorized credit card to make purchases totaling $59,153.89 at various retail stores in South Carolina.

<u>Overt Act No. 9</u>:   Between January 2, 2019, and January 3, 2019, at defendant KOVALEV's direction, Coconspirator 7 posed as "David Greer" and used the unauthorized credit card to make purchases totaling $88,433.97 at various retail stores in Michigan.

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Five of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court;

//
//

(d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                        A TRUE BILL

                                                    /s/
                                        _____
                                        Foreperson

E. MARTIN ESTRADA
United States Attorney

[signature]

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division

KHALDOUN SHOBAKI
Assistant United States Attorney
Chief, Cyber & Intellectual
  Property Crimes Section

LAUREN RESTREPO
Assistant United States Attorney
Deputy Chief, Cyber & Intellectual
  Property Crimes Section

AARON FRUMKIN
Assistant United States Attorney
Cyber & Intellectual Property
  Crimes Section

NISHA CHANDRAN
Assistant United States Attorney
Cyber & Intellectual Property
  Crimes Section